ers intended to and do make osteopaths practitioners of medicine and also make them physicians because subdivision 8 of section 1 of this act says that a physician means a practitioner of medicine. It is claimed that the practice of osteopathy first began in the state of Missouri. By the statutes of that state (Rev. St. Mo. 1899, p. 1993, c. 128 [Am. St. 1906, p. 3994]), it is specifically provided that osteopathy is not the practice of medicine. It was in the power of our Legislature to make a similar provision, but they did not do so, but, on the contrary, they defined the practice of medicine so that it must be interpreted to include the work done by osteopaths in the practice of their profession. The Sanitary Code of this city provides that the word "physician" shall include every person who practices about the cure of the sick and injured or who has charge of any person sick, injured, or diseased, etc.

So it is clear to my mind that osteopaths are physicians and practice medicine, and, except for the restrictions put on them by chapter 344. p. 636, Laws 1907, prohibiting them from administering drugs, and performing surgery with use of instruments, they are entitled to all the rights and subject to all the penalties of other physicians and medical practitioners. The fact that their degree is O. D. instead of M. D. makes no difference so far as their right to register and grant death certificates is concerned. The study required of them before their admission is of such a general and extensive character as to fully fit them to certify as to cause of death of a patient.

Mandamus asked for granted, with $50 costs.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

James D. Bell, for appellant.
Martin W. Littleton (Frederick Allis, on the brief), for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Mr. Justice Dickey at Special Term.

---

NEW YORK DOCK CO. v. INDIA WHARF BREWING CO.

(Supreme Court, Appellate Division, Second Department. June 12, 1908.)

1. WHARVES—"WHARFAGE"—DEFINITION.
    Wharfage is a charge against a vessel for lying at a wharf, and not a charge for caring for the goods.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Wharves, §§ 13–18.
    For other definitions, see Words and Phrases, vol. 8, pp. 7435–7436, 7835.]

2. SAME—EASEMENT OVER WHARF—DEEDS—CONSTRUCTION.
    A company organized for the purpose of carrying on the business of wharfage, etc., including the owning and maintaining of docks, conveyed certain lots subject to a right of way in the grantees over the street between the lots and the outside line of the dock. Thereafter the company improved the property by constructing a basin and various wharves, one of which was built in the street referred to in the deed. The parties evidently expected that the lots would be improved by the erection thereon of stores or warehouses, and the deeds declaring that the owners thereof, when erected, should have the right to lay down railways from each of the pier lots to the outside line of the pier so as to admit carriages to pass over them, and so as not to obstruct the passageway. The grantor reserved the right to all dockage as well as the entire control, interest, and income of all the piers, docks, etc. The grantor's successors contended that what was granted was an irrevocable license to come on the dock to do business with the dock company on paying a reasonable compensation. *Held*, that the grantee and his successors acquired by the deed the right to use the right of way over the wharf without payment of toll, and to remove without charge by means of trucks drawn over the

surface of the wharf goods from vessels lying at the wharf; such goods being placed directly on the trucks.

Appeal from Judgment on Report of Referee.

Action by the New York Dock Company against the India Wharf Brewing Company. The cause was referred to Hamilton Odell, Esq. There was a judgment for defendant, and plaintiff appeals. Judgment affirmed on the opinion of the referee.

The following is the opinion of the referee:

Many of the material facts of this case are very clearly stated in the opinion of the court in India Wharf Brewing Company v. Brooklyn Wharf & Warehouse Company, 59 App. Div. 83, 69 N. Y. Supp. 274. The present defendant was the plaintiff in that case, and the present plaintiff is the successor of the defendant in that case and the owner of all of its franchises and properties, including Hamilton Wharf, which is the "India Wharf" mentioned in the case referred to. This wharf is private property, and the right of the public therein is as licensees. Downes v. Elmira Bridge Co., 41 App. Div. 340, 58 N. Y. Supp. 628.

The complaint sets forth three causes of action. Taken together, and as originally stated, they charge that between the 31st of December, 1898, and the commencement of the suit, the defendant "left, placed, or deposited or caused to be left, placed, or deposited, certain goods, merchandise and materials belonging or consigned to it, or in its possession, custody, or control, upon said India (Hamilton) Wharf, in the amounts and quantities and of the weights and at the particular times and from the barges, boats, and other crafts or vessels as specified and set forth" in schedules annexed to the complaint. Two of these alleged causes of action the plaintiff holds by assignment from prior owners or occupants of the said wharf. The plaintiff and its assignors are described as wharfingers and warehousemen, operating as such the wharf in question, and the claims in suit as described in the original complaint are for the "use" of the wharf by the defendant in placing and depositing upon it the goods and materials above referred to. At the close of the trial, the complaint was amended, on the plaintiff's motion, by inserting in the fourth, thirteenth, and twenty-first paragraphs thereof, after the allegations relating to the deposit of said goods, the words "and transported the said goods, merchandise and materials over said India (Hamilton) Wharf." The corporate powers possessed by the plaintiff are those which were formerly possessed by the Brooklyn Wharf & Warehouse Company, which was organized for the purpose of "carrying on the business of storage, wharfage, warehousing, and forwarding, and the doing of each and every act or acts, thing, or things, incidental to or growing out of or connected with said business"—including the owning and maintaining of docks, bulkheads, piers, basins, and warehouses, the storage of goods, the storage and docking of all kinds of water craft, the loading and unloading thereof, "the collection and receipt of dockage, wharfage, and storage dues and other compensation," and various other purposes.

It is agreed and admitted that during the period covered by the claims in suit vessels of various descriptions entered the plaintiff's basin, and were moored to or alongside of the India or Hamilton Wharf, upon which the defendant's property abutted, for the purpose of discharging so much of their cargoes as was consigned to the defendant, and that the goods mentioned in the schedules attached to the complaint "were discharged from the said vessels and received by the defendant." It is also agreed and admitted that the manner of receiving the said goods, wares, and merchandise by the defendant was as follows: "A truck, drawn in some instances by men and in others by a horse, was taken from the premises of the defendant by the defendant's servants and employés, over the surface of the said India or Hamilton Wharf to the outside line or face thereof, at the point where the said vessel was moored. The said goods, wares, and merchandise were thereupon taken by the employés of the defendant from the hold of the vessel and placed directly upon said truck. As soon as the said truck was loaded, it was again drawn over the surface of the said wharf from the out-

111 N.Y.S.—28

side line or face thereof to the defendant's premises. None of the said trucks stood continuously upon the said wharf for a period exceeding 24 hours or for any longer time than was conveniently necessary for the said trucks to be loaded and withdrawn as aforesaid. The wheels of the said trucks did not run upon tracks, but rested directly upon the surface of the said wharf." It is further agreed and admitted that "none of the said goods, wares, or merchandise were placed directly upon the India Wharf by the defendant, its servants, agents, or employés, or left to remain there for any length of time other than as they were placed upon the trucks belonging to the defendant as above set forth," and that every vessel moored to the wharf for the purpose of discharging cargo paid to the plaintiff or its predecessors in title its statutory charges for such mooring, computed on the tonnage of the vessel, which charges the plaintiff and its predecessors were entitled to make and collect.

Much has been said in the arguments of the learned counsel about the wharfage rights of the plaintiff and the statutory or other rules by which they are controlled or regulated. The claims in suit are not claims for wharfage. Wharfage is defined to be "a charge against a vessel for lying at a wharf, and not a charge for caring for the goods." Woodruff v. Havemeyer, 106 N. Y. 135, 12 N. E. 630. The learned counsel for the plaintiff says that the charge which he is seeking to enforce is "solely a charge against the consignee of goods for the use of the plaintiff's wharf in transporting such goods from the water edge to its own property." The defendant insists that, when a vessel pays wharfage for the privilege of discharging cargo upon a wharf or pier, the consignee of the cargo has the right to enter upon the wharf or pier and remove such cargo without payment of further fee or charge. The plaintiff contends that wharfage is paid by the vessel for the service rendered to the vessel, or for the use by the vessel of the wharf, and for nothing else, and that for the subsequent service rendered to the consignee, or the subsequent use of the wharf by him in receiving and removing the cargo, the cargo or the consignee should pay an additional compensation; and in support of this is cited the case of International Hide Company v. New York Dock Co., 93 App. Div. 562, 87 N. Y. Supp. 886, where it is said that in Woodruff v. Havemeyer, supra, it was expressly declared that section 862 of the charter of the new city of New York could not be construed "to prohibit the owner of a private wharf from entering into a contract for the landing and deposit of goods upon his wharf upon such terms as may be agreed upon between himself and the owner of the goods, nor can it be construed as requiring him to store goods for any period without compensation," from which the court said it followed "that when a wharf in the city of New York is used for less than 24 hours for the deposit of merchandise, and there is no express agreement as to the measure of compensation, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred." Laws 1897, p. 311, c. 378. It is not necessary to decide between these two contentions, for a second objection taken by the defendant seems to me to forbid a recovery by the plaintiff. This objection is set forth in the answer in the statement of the second defense, and is to the effect that the defendant has a free right of way and right to transport its goods over the said wharf, by reason of a deed made by the Atlantic Dock Company to Nathaniel L. Griswold in 1842. The facts in brief are as follows: The Atlantic Dock Company was a corporation created by a special act of the Legislature in 1840 for the purpose of building and maintaining docks, bulkheads, piers, basins, etc., in the city of Brooklyn, for commercial uses, with capacity to acquire, hold, and improve such lands "as may be necessary or convenient to carry the objects of said corporation into full force and effect," and was authorized by its charter "to receive reasonable dockage and wharfage from all persons using" the facilities it should provide. Thereafter the company acquired title to a large tract of land lying along the East river, in the Sixth Ward of Brooklyn, including the several lots now owned by the defendant in this action, and prior to 1850 improved the same by the construction of what is known as the Atlantic Basin and various wharves and piers, thus adapting it to the business for which the company was created. On July 30, 1842, the Atlantic Dock Company, by a full covenant warranty deed, granted and conveyed to Nathaniel L. Griswold 25 lots or parcels of ground

with their appurtenances, designated by numbers on a map referred to in said deed as "Map of property in the Sixth Ward of the city of Brooklyn, port of New York, belonging to the Atlantic Dock Company, surveyed September, 1841, by Williard Day, City Surveyor," and all situated on the easterly side of and abutting on India Wharf, "subject, however [so it was stated in the deed], to the right of way in common with others over the street or space between the said lots and the outside line or face of the dock on the basin side of said lots, which street or space is fifty feet wide, as laid down on their said map." The court has said that this means, or is equivalent to, "together with a right of way." 59 App. Div. 93, 69 N. Y. Supp. 282. The "street or space" here referred to was the India Wharf. The defendant is now the own-er of all that was conveyed to Griswold by the dock company. At the date of the conveyance to him the property of the dock company had not been improved; that is, the contemplated basin, wharves, piers, etc., had not been constructed. It was evidently expected by both parties to the deed that the lots conveyed, or some of them, would be improved by the erection thereon of stores or warehouses. The deed described with much particularity how such stores or warehouses should be built, their height and depth, the thickness of the walls, the materials to be used, the uses to which they should not be put, etc., and then declared: "The owner or owners of any such store or ware-house when erected shall have the right of laying down railways from each of the said pier lots to the outside line of said pier or dock in such manner as will admit carts and carriages to pass over them with con-venience and so as not to obstruct the passageway." Now, it is worth mentioning that Griswold was one of the incorporators of the Atlantic Dock Company and one of its directors during the first year of its existence, and presumably was acquainted with its plans and intentions. He knew that a free right of way across the wharf to the basin would give the lots additional value, and that such a right of way would be indispensable to a comfortable use of the warehouses that might be built upon the lots. He bought the lots with that easement or privilege attached to them, and paid for lots and easement the sum of $40,000. Of the dock company's deed to him the Court of Appeals has said: "The intention of the parties as expressed in the grant no doubt was to give to the plaintiff such use of the dock and basin as was reasonably necessary in the transaction of its business." 173 N. Y. 175, 65 N. E. 985. The plaintiff puts a different construction on the deed. The argument of its learned counsel is that, as the wharf was private property, it could not be used by the public without the owner's consent, and that any permission to use given by the owner was revocable at his pleasure, and that what was granted to Griswold and his assigns was an "irrevocable license to come upon the wharf for the purpose of doing business with the dock company"; they paying a reasonable price for the privilege of doing so. This claim is based largely upon the following provision in the deed: "The said parties of the first part reserve to themselves, their successors or assigns, the right to all dockage, or wharfage, as well as the entire control, interest and income of all their piers, docks, bulkheads and basins, and hereby obligate and bind them-selves, their successors or assigns, to keep the said piers, docks and bulkheads in repair at their own proper costs and expense." "Entire income," counsel says, means entire income, and not something less than entire income, which cannot be denied. The question here is: Are the defendant's lots liable to contribute to that income or were they released from such liability by the grant to Griswold? My opinion is that they were. The grant is a plain grant of a "right of way," for which the grantor paid and which his assigns are en-titled to use without payment of toll. Counsel also says that the expression, "in common with others," in the deed, means, or is equivalent to, "on the usual terms." I do not think so. Griswold was not to have an exclusive right of way, and the deed so stated.

My conclusion is that the defendant has the right to use the right of way over the wharf in the manner described in the second paragraph of the fourth article of the stipulated facts (Arnold v. Fee, 148 N. Y. 214, 42 N. E. 588; Gil-lespie v. Weinberg, 148 N. Y. 238, 42 N. E. 676), without charge by the plain-tiff, and that, therefore, there should be judgment for the defendant dismissing

the complaint. If counsel desire to submit findings in addition to the stipulated facts, they may do so on or before October 4th.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Davies, Stone & Auerbach, for appellant.
Garvan, Armstrong & Conger, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

(58 Misc. Rep. 451.)

### FRAENKEL v. FRIEDMAN.

(Supreme Court, Special Term, New York County. March, 1908.)

PLEADING—AMENDMENT—CONFORMITY TO PROOF.

A contractor sued to foreclose a lien on a building, alleging performance of the contract. The evidence showed that the contract was not performed according to all its terms, and that a deviation from the contract led to the filing by the bureau of buildings in the city of New York of violations of the building code. *Held*, that a motion by plaintiff at the end of the trial to amend the complaint, alleging a substantial compliance with the contract and a waiver by the owner of strict compliance, will be denied.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 603–619.]

Action by Armin Fraenkel against Jonathan Friedman to foreclose a mechanic's lien. Complaint dismissed.

S. J. Cohen (Thos. C. Ennever, of counsel), for plaintiff.
Levi, Weil & Newhouse (A. C. Weil, of counsel), for defendant.

HENDRICK, J. This is an action to foreclose a mechanic's lien. The action was upon a contract for the performance of certain work and materials in making alterations of the premises No. 635 East 135th street, in New York City. The complaint alleges that, prior to the filing of the notice of lien claimed, the plaintiff had performed all of the work and furnished all of the material required to be performed and furnished under the contract, and fully completed the contract. It developed upon the trial that the plaintiff was unable to establish a compliance by himself with the terms of the contract, and, in lieu thereof, he attempted to prove a substantial compliance. It appears from the proofs which were offered that there were substantial deviations from the contract, and that some of these deviations lead to the filing by the bureau of buildings of violations of the building code. One of these violations was filed because of the fact that at the time certain beams were first inserted there was a bearing of one or two inches only on the flange, whereas the specifications required a four-inch bearing. Plaintiff claims that this defect was corrected by riveting an iron plate four inches in length to the beam. It does not appear that the plaintiff obtained the sanction of the department of buildings to this method of doing the work; and, after several reinspections of the work by the department, the violation was held to be still in force, and it is now on file and in the hands of the corporation counsel of the city of New York